UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SARA E. CROCKER,

       Plaintiff,

v.                                                                          Case No. 1:08-cv-1091
                                                                            Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for disability insurance benefits (DIB).

Plaintiff was born on February 11, 1970, and earned a GED (AR 84, 93).[1]  She

alleged a disability onset date of December 22, 2002 (AR 84).  Plaintiff had previous employment

as an assistant lot coordinator at an auto auction, cashier and crew member at a fast food restaurant,

phone operator, waitress/cook,  and production worker (AR 88, 103-10).  Plaintiff identified her

disabling conditions as manic depression, bi-polar disorder, left knee injury, female problems and

abnormal pap smears" (AR 87, 175).  After administrative denial of plaintiff's claim, an

Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying

---

[1] Citations to the administrative record will be referenced as (AR "page #").

these claims on June 25, 2008 (AR 13-17).  This decision, which was later approved by the Appeals

Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on

determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*,

25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based

upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th

Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court

does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that

the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in the

record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must

stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to

benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff was insured for benefits through June 30, 2007, and that she had not engaged in substantial gainful activity since the alleged onset date of December 22, 2002 (AR 14). At step two, the ALJ stated that "[t]hrough the date last insured, the claimant had a severe affective disorder and other less severe impairments" (AR 14).[2] At step three, the ALJ found that plaintiff did not have an impairment that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 14).

At step four, the ALJ found that"through the date last insured, the claimant had a light exertional RFC [residual functional capacity]," and described her additional restrictions as follows:

> The claimant's sole physical limitations are the result of her right knee impairment, her left knee now healed and not limiting her. Her gynecological problems also are not severe. Her right knee impairment does limit postural activities to occasional performance only and she is limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently. Her bipolar disorder does limit her abilities to maintain concentration and sustained attention necessary for performance of detailed or complex tasks.

(AR 16). The ALJ also found that through the date last insured, plaintiff was unable to perform her past relevant work (AR 16).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work in the regional economy, which included cleaner/housekeeper (30,000 jobs), and manufacturing (25,000 jobs as an assembler, packager and machine tender) (AR 16). After determining that plaintiff could perform other work, the ALJ made the following observation:

> The record is replete with documentation of both drug (cocaine and marijuana) and alcohol abuse with periods of abstinence/remission and periods of

---

[2] While the ALJ stated that "[t]he claimant's most severe documented impairment has been diagnosed as either depression or a bipolar disorder," he did not reach a conclusion as to whether the depression or bipolar disorders were severe impairments (AR 14-15).

active abuse.  However, based on the above findings, the undersigned does not reach
the issue of materiality or contribution.

(AR 17).

Accordingly, the ALJ determined that plaintiff was not under a disability at any time

from December 22, 2002 through June 30, 2007, the date last insured, and entered a decision denying

benefits (AR 16).

## III.  ANALYSIS

Plaintiff raises one issue on appeal:

**There is no substantial evidence to support the Commissioners's
conclusions that the claimant's psychiatric conditions do not
severely interfere with her ability to perform work related
functions on a consistent longitudinal basis.**

### A.      Dr. Bradley's opinions

Plaintiff contends that the ALJ ignored the opinions of her treating physician, Ronald

Bradley, M.D., regarding her psychiatric problems.  Plaintiff admits that "[t]here is no doubt that

during limited periods of time the claimant would be able to function at an acceptable level."

Plaintiff's Brief at 6 (docket no. 6).  However, plaintiff contends that she is incapacitated by a bi-

polar disorder, pointing out: that "[t]he very concept of the bi-polar disorder is dependent on a

volatile and fluid changing in the patient['s] state of mind;" that "[t]he bi-polar disorder is one that

is uniquely incapable of assessment in a one time evaluation;" and that the agency's examining

physician's conclusions do not support the ALJ's decision, because the examiner observed plaintiff

"in a mildly manic state."  *Id.* at 6-8.  Plaintiff contends that the more accurate evaluation is by her

treater, Dr. Bradley, who "noted severe concerns with depression, stress, lack of sleep etc." in May

and June 2004. *Id.* at 8-9. Plaintiff, however, fails to cite any of Dr. Bradley's treatment records in support of this position.

The ALJ's decision relied upon the findings at a consultative examination performed by John Jeter, M.A., LLP, and Hugh Bray, Ph.D. in July 2005 (AR 14-15, 175-82). The examiner noted that plaintiff had been diagnosed with a bipolar disorder, and alcohol and cannabis dependency (AR 182). Plaintiff had been under the care of a psychiatrist at the time, but had no plans to go back (AR 14-15). Plaintiff responded appropriately to the examiner, had no difficulty understanding simple and multi-step directions, exhibited no unusual or bizarre behaviors, had no unusual findings with respect to her mental trend and thought content, and was "friendly and pleasant throughout the assessment" (AR 179). Plaintiff reported depression two weeks prior to the examination lasting about 1 to 2 days, and was mildly manic when examined (AR 181). She reported smoking crack and marijuana, having poor hygiene, under eating, being easily agitated, feeling helpless and hopeless, and had a decreased sex drive (AR 181). Plaintiff denied having anxiety symptoms or panic attacks (AR 181). Based on these observations, the examiner assigned plaintiff a Global Assessment of Functioning ("GAF") score of 72 (which reflected the examiner's opinion that plaintiff suffered from "no more than slight impairment in social, occupational, or school functioning") (AR 182).[3]

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

The ALJ also relied on the reports of Tatyana Sigal, M.D., who began treating plaintiff in August 2006 (AR 15, 362). The ALJ noted that Dr. Sigal treated plaintiff seven times in fourteen months, during which time the doctor found plaintiff to have fair progress, with a stable mood and the ability to sleep while taking two medications (Seroquel and Lamictal) (AR 15, 356-72). While plaintiff testified that she did not shop, was stressed out by being around people, had no friends, did not cook, and had overdrawn her checking account by overspending, there is no mention of these chronic problems in Dr. Sigal's treatment notes (AR 15). The ALJ also rejected mental RFC assessments prepared by Dr. Sigal as inconsistent with the treatment notes. According to the ALJ, while the treatment notes found that plaintiff was stable and making fair progress, Dr. Sigal's assessments found that she had moderate or marked limitations in every listed activity (AR 15).[4]

While plaintiff refers to an "ongoing psychiatric evaluation" performed by Dr. Bradley (see docket no. 6 at p. 6), she does not identify any opinions expressed by the doctor that are relevant to her disability claim.[5] Contrary to plaintiff's contention, that Dr. Bradley "noted severe concerns" in May and June 2004, the treatment notes from that time were signed by plaintiff's counselor (as opposed to Dr. Bradley) (AR 327-28). These notes reflect that plaintiff

---

[4] Dr. Sigal's assessments are only minimally probative of plaintiff's disability claim. Since plaintiff's insured status for purposes of receiving disability insurance expired on June 30, 2007, she cannot be found disabled unless she can establish that a disability existed on or before that date. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), *citing Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). Such evidence is only considered to the extent it illuminates a claimant's health before the expiration of her insured status. *Jones*, 1997 WL 413641 at *1; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Here, Dr. Sigal's first mental RFC assessment is dated October 5, 2007 (AR 365-67) and her second assessment is dated March 27, 2008 (AR 384-86). These assessments were completed three and nine months, respectively, after plaintiff's last insured date of June 30, 2007. Accordingly, Dr. Sigal's assessments are only minimally probative of plaintiff's condition as it existed on or before her last insured date.

[5] The court notes that Dr. Bradley's handwritten treatment notes relating to plaintiff are for the most part illegible (AR 326-42).

continued to use alcohol and cannabis, was fully oriented, and had no suicidal ideation (AR 327-28).

Plaintiff cancelled appointments with the doctor scheduled for June 21, 2004 and July 1, 2004 (AR 326). During plaintiff's four therapy visits in May and June 2004, the therapist assigned her GAF scores of either 50 or 55, which would suggest "moderate" to "serious" symptoms. Plaintiff ceased treatment with Dr. Bradley sometime prior to October 2004, when she reported to Dawn E. Springer, M.D. that Dr. Bradley "dismissed her because [she] would not come in every week" and "because she was arrested for getting into a bar brawl" (AR 121).

Accordingly, plaintiff's contention that the ALJ ignored Dr. Bradley's opinion expressing "severe concerns" in May and June 2004, is without merit.

### B. The ALJ's hypothetical question

Plaintiff also asserts that "[t]he hypothetical questions posed to the vocational expert are grossly inadequate in reflecting the psychiatric impairments that the claimant suffers as set forth in the Psychiatric Functional Capacity Assessment for of Dr. Sigal and the severe findings as set forth by Dr. Bradley." Plaintiff's Brief at 9 (docket no. 6). Plaintiff contends that the record does not support the "limited psychiatric limitations" set forth in the ALJ's hypothetical question, which considers only "an inability to work collaboratively with others" and "an inability to maintain sustained attention and concentration for detailed or complex tasks." *Id.*

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately

portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question

need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of*

*Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of*

*Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate

unsubstantiated complaints into his hypotheticals").

Plaintiff, however, cites no legal authority or medical evidence in support of her

claim that the ALJ relied upon evidence elicited from a defective hypothetical question. "[I]ssues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal

way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96

(6th Cir. 1997). This court need not make the lawyer's case by scouring the party's various

submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641

(7th Cir. 1995). Accordingly, the court considers this argument waived.

## IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be

affirmed.

Dated: November 2, 2009                          /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).